# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

BY_____
DEPUTY

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43217-0-II |
| Respondent, | |
| v. | |
| SHAW CARL SEAMAN, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, C.J. — A jury found Shaw Seaman guilty of one count of attempting to elude a pursuing police vehicle. Seaman, representing himself on appeal, argues that 1) insufficient evidence showed he knew he was being pursued by a police vehicle, 2) the State committed prosecutorial misconduct, and 3) his trial counsel was ineffective. Because there was sufficient evidence to convict Seaman, and his other challenges are without merit, we affirm.

## FACTS

On June 21, 2010, at about 9:00 PM, Sergeant Fredrick Wetzel was on patrol heading east on Highway 12 on a section of roadway with "long sweeping type S curves." Report of Proceedings (RP) at 28. Daylight was beginning to diminish, but it was not completely dark yet.

Sergeant Wetzel was driving a fully marked Chevrolet Trailblazer with a light bar on top, stripes on its side, sirens, and insignia stating Lewis County Sheriff on the front, sides, and back.

As Sergeant Wetzel was approaching milepost 92, he passed a car heading in the opposite direction. His radar unit measured the car's speed at 78 miles per hour as it was going through a sweeping curve. The posted speed limit was 55 miles per hour. Wetzel turned around, planning

to stop the driver, but the car had gone around a curve and was out of sight. After speeding up to about 80 miles per hour, Wetzel gained on the car and was able see it again. Wetzel activated his overhead emergency lights. As it was dusk, the lights appeared brighter than they would have during the day. Wetzel estimated that he was about 100 yards behind the car when he activated his lights. This was just when the car he was pursuing began to go around another curve on the highway.

Moments after Sergeant Wetzel activated his emergency lights, he saw the car's brake lights activate briefly as it went around the curve. Wetzel lost sight of the car after it traveled around the curve. After Wetzel went around the curve, he saw that the car was off the highway. The car, a Honda with a government license plate, appeared to have spun out of control and gotten stuck.

The Honda was sitting perpendicular to the highway and was facing south toward the highway. The Honda was stopped on heavy grass off the shoulder, near an old logging access road. Wetzel saw tire or scruff marks from what he thought would be caused by a vehicle turning rapidly. The tire marks led towards the direction of the access road, showing that the driver of the Honda might have tried to drive to the access road. The car's front appeared damaged. Seaman was in the car's driver's seat. Sergeant Wetzel arrested Seaman and also cited him for speeding.

Seaman was charged with attempting to elude a pursuing police vehicle, RCW 46.61.024. At trial, the State called Sergeant Wetzel, who testified to the above facts. The State also called an employee from the Department of Licensing who testified that the Honda was registered to the General Administration State Motor Pool. Seaman chose to not testify. During closing

argument, the prosecutor stated that Seaman was a state employee and he emphasized that Seaman had been driving a state owned vehicle. The prosecutor also argued that Seaman tried to get away using the logging road, but failed. Seaman did not object to the prosecutor's arguments. The jury found Seaman guilty as charged. Seaman appeals.

ANALYSIS

A.    *Sufficiency of the Evidence*

Seaman argues there was insufficient evidence for the jury to find him guilty of eluding. Seaman argues specifically that there was insufficient evidence to establish that he knew he was being pursued by a police vehicle. We disagree.

To commit the offense of attempting to elude, the driver must act "willfully":

> Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens. .

RCW 46.61.024(1). Willfulness in this context is synonymous with knowledge. *State v. Flora*, 160 Wn. App. 549, 553, 249 P.3d 188 (2011). To be guilty of eluding, the driver must have knowledge that there is a pursuing police vehicle. *Flora*, 160 Wn. App. at 554; *State v. Stayton*, 39 Wn. App. 46, 49, 691 P.2d 596 (1984) ("There can be no 'attempt to elude' unless there is the prerequisite knowledge that there is 'a pursuing police vehicle.'").

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All

3

"reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Salinas*, 119 Wn.2d at 201. "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are deemed equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "Credibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Here, there was sufficient evidence for a rational trier of fact to conclude that Seaman knew he was being pursued by a police vehicle. Seaman passed a marked police vehicle heading in the opposite direction on a two-lane highway while speeding. Shortly thereafter, when Seaman's car was in Sergeant Wetzel's sight at an estimated 100 yards away, Wetzel activated his emergency lights. Although Seaman vanished from Wetzel's line of sight almost immediately after Wetzel activated his emergency lights, the lights were activated before Seaman went around the curve. Because it was dusk, these lights were more visible than during the day. Seaman's brake lights also flashed on briefly, from which a reasonable inference can be made that Seaman possibly noticed the emergency lights and instinctively hit his brakes. Moments later, Wetzel found Seaman in his car off the highway in some grass near an old logging road. The car was positioned perpendicular to the highway and was facing the highway. There were tire marks nearby, leading in the direction of an old logging access road.

From this evidence, a jury could reasonably infer that Seaman knew he was speeding, that he saw Sergeant Wetzel's emergency lights, and tried to elude Wetzel. Thus, there was

sufficient evidence for the jury to conclude that Seaman had knowledge of a pursuing police vehicle and that he attempted to elude it.

Seaman further argues that insufficient evidence supports his conviction because the physical evidence contradicts Sergeant Wetzel's testimony that he activated his lights at about 100 yards away and that Wetzel must have been much further away. He contends that given the speed of the two vehicles, the fact that Wetzel had to stop and turn around, and the fact that Seaman's car was found stopped facing the highway, Wetzel could not have possibly activated his lights within 100 yards of Seaman. But whether Wetzel's testimony was credible was a question for the jury. Viewing the evidence in the light most favorable to the State, any rational trier of fact could have found Seaman guilty beyond a reasonable doubt and, thus, his arguments fail.

B.     *Prosecutorial Misconduct*

Seaman next argues that the State committed prosecutorial misconduct. We hold that there was no prosecutorial misconduct.

Prosecutorial misconduct requires a showing that the prosecutor's conduct was improper and prejudicial. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 58, 296 P.3d 872 (2013). Making closing arguments that are unsupported by the admitted evidence is improper. *Yates*, 177 Wn.2d at 58. Prosecutors have wide latitude in making arguments to juries and may draw reasonable inferences from the evidence. *Yates*, 177 Wn.2d at 58. Prosecutors should not use arguments calculated to inflame the passions or prejudices of the jury. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012) (plurality opinion). We review a prosecutor's conduct in the full context of the trial. *Yates*, 177 Wn.2d at 58. When the defendant fails to object to the

comments at trial, the defendant must show that the comments were "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).

Seaman first argues that it was improper for the prosecutor to emphasize that Seaman was driving a State owned car and that he was a State employee. During closing argument, the prosecutor argued that Seaman may have been motivated to try to elude the police because he was a State employee driving a State owned vehicle:

> You've got Exhibit Number 2, certified copy from the Department of Licensing of the vehicle registration for the vehicle the defendant was driving. The license plate matches up, make of the vehicle matches up to what Sergeant Wetzel saw. It's a State vehicle.
> And that becomes relevant. . . [.] We'll talk a little more about that. But that becomes relevant when you ask yourself, well, why would the defendant do this, because you do have to ask yourself that. And you'll go back there and think about what was the defendant doing here, was he pulling off the road or was he trying to jump down the logging road?
> You might ask yourself, well, why would he do that? He's driving a State vehicle and he's speeding over 20 miles per hour over the speed limit. Now, you folks, you get a speeding ticket for 20 over, you might pay a couple hundred bucks. What happens to the defendant if he's speeding in a State car? He's employed by the State. Ask yourself that when you think about what's his motivation here.

RP at 81-82. The prosecutor again briefly mentioned this theory during rebuttal. Implicit in the prosecutor's argument was that Seaman might lose his job or be punished if he was caught speeding in his employer's car.

Seaman contends this argument was inflammatory and was intended to appeal to class prejudices. We disagree. Appeals to class prejudice are improper. *U.S. v. Jackson-Randolph*, 282 F.3d 369, 376 (6th Cir. 2002); *State v. Neidigh*, 78 Wn. App. 71, 79, 895 P.2d 423 (1995). But Seaman does not clarify how the prosecutor's attempt to explain Seaman's possible motive

was an appeal to class prejudice or how this would inflame the passions or prejudices of the jury. There is no reason to think that the jury would be more likely to convict Seaman because he was employed by the government. *Compare State v. Belgrade*, 110 Wn.2d 504, 506-08, 755 P.2d 174 (1988) (prosecutor committed misconduct by telling jury that the defendant was "strong in" the American Indian movement and that its members were "a deadly group of madmen" and "butchers that kill indiscriminately").

Seaman also contends the prosecutor's argument was improper because it was irrelevant whether he was a State employee driving a State owned car. But as the prosecutor implied, it was a reasonable inference that a State employee would suffer some consequences for speeding in a State owned vehicle. Therefore, the facts showing that Seaman was a state employee, speeding in a State owned vehicle, would be relevant to show motive to elude. Thus, the remark was not flagrant and any prejudice could have been neutralized by an objection and following admonition by the judge to the jury. Seaman's argument fails on this point.

Next, Seaman contends that the prosecutor made arguments that were unsupported by the evidence or the law. Specifically, he contends it was improper for the prosecutor to theorize that Seaman saw the logging road and decided to try to use the road to escape. During closing argument, the prosecutor said:

> Take all the evidence about the indications of how this vehicle got off the roadway and that's the circumstantial evidence that leads you to believe that the defendant didn't just pull off the road, he drove off at a high rate of speed, trying to dart down that logging road.

RP at 85. The prosecutor was arguing the jury should make an inference from the circumstantial evidence. This was permissible. Seaman contends the prosecutor was forbidden from making this argument because the trial court had earlier sustained an objection to Sergeant Wetzel's

7

testimony. There, the prosecutor asked Wetzel what factors he used to reach his conclusion that Wetzel tried to elude him. But this evidentiary ruling did not forbid the prosecutor from asking the jury to draw conclusions from the circumstantial evidence.

Seaman also argues the prosecutor misled the jury when he told the jury there was no camera when in fact Sergeant Wetzel testified he did have a camera. During closing argument, the prosecutor argued, "[D]on't let the fact there's not some pictures of tire marks or the fact there's not a camera distract you . . . ." RP at 81. Seaman takes the prosecutor's statement out of context. Wetzel testified that his police vehicle did not have a video camera that would have recorded the pursuit. Wetzel did have a camera to take pictures, but he did not use it to capture the scene. When the prosecutor said there was no camera, the context shows he was talking about a video camera that would have been mounted in the police vehicle. This was not misconduct; Seaman's argument fails.

We reject all of Seaman's prosecutorial misconduct claims.

C.    *Failure To Excuse or Accommodate Two Jurors*

In his opening brief, Seaman argues the trial court failed to excuse one juror who was sleeping and failed to reasonably accommodate a juror who was deaf or hard of hearing. As the State correctly argues, Seaman did not raise these complaints below and the record is insufficient to substantiate his allegations. In his reply brief, Seaman concedes that these issues are not properly before us. Because these issues are raised for the first time on appeal and the record is inadequate to address them, we accept his concession. *See* RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court."); *State v.*

*McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995) (appellate court will not consider matters outside the record).

D.     *Ineffective Assistance of Counsel*

Last, Seaman makes various arguments that his trial counsel was ineffective. To establish ineffective assistance of counsel, Seaman must show that his counsel's performance was deficient in that it fell below an objective standard of reasonableness based on all the circumstances; and the deficient performance prejudiced him because, had the errors not occurred, the result probably would have been different. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984); *McFarland*, 127 Wn.2d at 334-35. If either part of the test is not satisfied, the inquiry need go no further. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). Judicial scrutiny of counsel's performance is deferential and counsel's conduct is presumed to be reasonable. *Strickland*, 466 U.S. at 689.

Seaman argues his attorney should have called him to testify. The record shows that Seaman chose not to testify, but does not reveal why. Seaman makes many statements in his brief concerning why he did not testify and recounts his conversations with trial counsel. These alleged conversations are outside the record and we do not consider them. *McFarland*, 127 Wn.2d at 338. A personal restraint petition is the appropriate means to raise issues outside the record. *McFarland*, 127 Wn.2d at 338.

Seaman argues that his counsel was ineffective for not requesting the statutory affirmative defense to eluding set out in RCW 46.61.024(2). This affirmative defense places upon the defendant the burden of proving that a "reasonable person" would not believe the signal to stop was given by a police officer:

> It is an affirmative defense to this section which must be established by a preponderance of the evidence that: (a) A reasonable person would not believe that the signal to stop was given by a police officer; and (b) driving after the signal to stop was reasonable under the circumstances.

RCW 46.61.024(2). "Failure to request an instruction on a potential defense can constitute ineffective assistance of counsel." *Flora*, 160 Wn. App. at 556. But Seaman's trial counsel did propose an instruction on this defense. Counsel cannot be considered ineffective for not proposing an instruction that he actually requested. The record on appeal does not contain a ruling on why this instruction was not given. Even assuming that Seaman's counsel later abandoned a request for this instruction, the instruction would likely have not been given without Seaman testifying. Without his testimony, there was insufficient evidence to support this instruction. *See Flora*, 160 Wn. App. at 556 (rejecting ineffective assistance of counsel claim for counsel not requesting statutory affirmative defense to eluding).

Seaman appears to argue that the affirmative defense statute, RCW 46.61.024(2), eliminated the State's burden to prove all the elements set forth in RCW 46.61.024(1) and that his counsel did not understand this. Seaman's understanding is wrong. Irrespective of the affirmative defense, the State has the burden to prove all the crime's elements. *Flora*, 160 Wn. App. at 555 (rejecting the State's argument that the affirmative defense eliminated the State's burden to prove all the elements of the crime of eluding). His trial counsel correctly held the State to its burden.

Seaman asserts that his counsel could have shown that Sergeant Wetzel was never closer than 400 to 800 yards while pursuing him. Without additional evidence, we cannot substantiate this claim. While the record before us contains some pictures of the highway and the place where Seaman's car came to a halt, these pictures do not show that Wetzel's estimation that he

was 100 yards behind Seaman was incorrect. Seaman improperly refers to matters outside the record and his argument on this point is speculative. Seaman fails to meet his burden showing counsel's performance on this point was deficient.

Seaman suggests his counsel was ineffective in his cross-examination of Sergeant Wetzel and that counsel did not adequately argue that Seaman lacked knowledge he was being pursued by a police vehicle. But the record shows that defense counsel asked questions designed to emphasize that Seaman was traveling fast and that Wetzel was not close behind him during the pursuit. Counsel got Wetzel to admit that Seaman "disappeared around the next curve," which was about the time Wetzel activated his emergency lights. RP at 52. As to counsel's closing argument, it cannot be reasonably concluded that counsel's argument was deficient. Counsel argued the State had failed to prove the elements of the crime and emphasized the lack of evidence in the case.

Seaman complains that his counsel did not effectively impeach Sergeant Wetzel's credibility. He points to an instance where counsel tried to elicit testimony from Wetzel concerning the speeding citation. The prosecutor repeatedly objected, on hearsay grounds, to questions asking what the ticket said and the trial court sustained most of these objections. Counsel was able to get Sergeant Wetzel to admit, without objection from the prosecutor, that there were several mistakes on the ticket. Seaman does not overcome the strong presumption that counsel's performance was reasonable. As Seaman does not show that his attorney's performance was deficient, his argument on this point fails.

No. 43217-0-II

We conclude that Seaman fails to meet his burden to establish that his trial counsel was ineffective.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, C.J.

We concur:

Johanson, J.

Lee, J.P.T.

12